

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 2, 2018

**BY ECF**

The Honorable Andrew L. Carter, Jr.
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States* v. *David Chee*, S1 17 Cr. 85 (ALC)

Dear Judge Carter:

      The Government respectfully submits this letter in advance of sentencing in this matter, currently scheduled for February 7, 2018 at 11:00 a.m. For the reasons explained below, the Government submits that a sentence within the Guidelines Range (the "Guidelines Range") of 0 to 6 months as set forth in the Pre-Sentence Investigation Report dated December 12, 2017 (the "PSR") is appropriate and no greater than necessary to serve the legitimate purposes of sentencing in this case.

**A. Factual Background**

      In 2011, Howard Tanner, the victim in this case, represented the defendant in connection with New York state charges that accused him of engaging in aggravated harassment and criminal impersonation. At that time, the defendant was a police officer with the New York City Police Department ("NYPD"), and was, among other things, alleged to have sent harassing text messages to the wife of his commanding officer. Chee was also suspected to have engaged in other harassing conduct, including impersonating another individual and sending threatening text messages to fellow members of the NYPD. To conceal his role in this conduct, the defendant used a spoofing technology to mask his phone number, which made it difficult for even the NYPD to identify the perpetrator. The defendant ultimately pleaded guilty to misdemeanor aggravated harassment and was able to retire from the NYPD, retain his pension and avoid a jail sentence. (PSR ¶¶ 10, 39, 54).

      Several years later, beginning in early 2016, Mr. Tanner became aware of several instances of harassing messages posted online about him and his law firm. The offensive and harassing posts were widespread, and included allegations that Mr. Tanner is racist, that he sexually harasses female clients, that he engages in bribery of judges and jurors, that he is an alcoholic, and other highly inflammatory and damaging messages about Mr. Tanner. (PSR ¶ 39). Mr. Tanner hired an investigator and was able to conclude that his former client, David Chee, was responsible for this harassment. He then reported the crime to the Government.

The Government's investigation, which spanned several months, concluded that Chee was responsible for these harassing posts as well as several instances in which Mr. Tanner's SuperLawyers account had been hacked by someone impersonating Mr. Tanner. It further revealed that many of the posts could only be traced back to IP-address routing services, and that Chee had used his credit card to pay for certain such services. (PSR ¶¶ 22-24).

**B. Procedural History**

The defendant was arrested on September 6, 2016 and charged with one count of cyberstalking in violation of Section 2261A of Title 18 of the United States Code, and ultimately pleaded guilty to one count of identity theft in violation of Title 18, United States Code, Section 1028(a)(7). (PSR ¶¶ 1-2). As set forth in the parties' plea agreement, and as the Probation Department sets forth in the PSR, the defendant has a total offense level of 8, one criminal history point, and an advisory Guidelines Range of 0 to 6 months. (PSR ¶¶ 4, 82). The defendant agreed to pay restitution in the amount of $91,759.21. (PSR ¶ 4).

**C. The Defendant's Submission**

The defendant's submission, dated January 30, 2018, seeks a sentence of probation with a special condition of six months' home detention, and primarily relies on the defendant's mental health issues in support of such a sentence.

**D. Discussion**

   **1. Applicable Law**

As the Court is well aware, the Sentencing Guidelines still provide strong guidance to sentencing courts following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall* v. *United States*, 128 S. Ct. 586, 594 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 596. After that calculation, however, the Court must consider the seven factors outlined in Title 18, United States Code, Section 3553(a), which include the nature and circumstances of the offense, the individual characteristics of the defendant, the need to adequately deter criminal conduct and promote respect for the law, and the need to provide just punishment. *Id.* & n.6.

   **2. A Guidelines Sentence of 0 to 6 Months Is Appropriate in This Case.**

As set forth below, a Guidelines sentence that contains, at a minimum, a period of either incarceration or home confinement is necessary here to promote respect for the law, provide just punishment, to afford adequate deterrence to this defendant and other similarly situated individuals, and to protect the public from further crimes of the defendant. *See* 18 U.S.C. § 3553(a)(2)(A)-(C).

*First*, a Guidelines sentence is necessary to promote respect for the law. Here, the defendant's conduct has had a significant and lasting impact on Mr. Tanner, his partner and his family. Both his business and personal reputation have suffered significantly as a result of the

defendant's senseless, and unwarranted harassment. It bears highlighting how damaging such offensive comments as those related to race, alcoholism, and corruption would be to any lawyer, much less a lawyer such as Mr. Tanner who supports his family through his operation of a two-person partnership. Over the past two years, Mr. Tanner has spent significant sums of his own money and countless hours of his personal and professional time in an effort to identify the masked perpetrator of the harassment, to lessen the impact of that harassment, and to try to rebuild his business. The defendant's sentence should reflect the damage caused by his conduct on his victim.

*Second,* a Guidelines sentence that includes some period of incarceration or home confinement is necessary to provide just punishment and to deter the defendant from committing future crimes. Here, this is not the defendant's first encounter with law enforcement arising from his harassment of others. A clear message needs to be sent to the defendant that any further such conduct by him will be met with increasingly stiff punishment and that he cannot simply continue to harass others without any real consequence. By contrast, a sentence without any term of incarceration or home confinement would be insufficient in this case, and would signal to the defendant that there are no consequences to his continued participation in criminal conduct.

Finally, in light of the defendant's history of repeatedly engaging in harassing conduct, the Government respectfully requests that any term of probation or supervision imposed by the Court be longer than the two-year term recommended in the PSR. Here, the defendant first engaged in harassing conduct prior to his 2011 conviction, and then seemingly resumed such harassment, albeit with a new victim, several years later. In both instances, the defendant took affirmative steps to conceal his criminal conduct and to avoid detection by law enforcement. A longer term of probation, with clear consequences for continuing to engage in harassing conduct, will serve not only to deter the defendant but to protect the public from his crimes for as long as possible.

**E. Conclusion**

For the reasons set forth above, the Government respectfully requests that the Court impose a Guidelines sentence, and that such sentence include, at a minimum, a term of home confinement, as such a sentence is sufficient but no greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

by: _____
Kiersten A. Fletcher
Assistant United States Attorney
(212) 637-2238

cc: Martin Cohen, Esq. (via ECF)